FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

97 MAR 27 AM 9:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| SHIRLEY ADAMS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | CV96-H-2418-NE |
| CHAMPION INTERNATIONAL CORP. and SEDGWICK JAMES OF ALABAMA, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**ENTERED**

**MAR 2 7 1997**

MEMORANDUM OF DECISION

Presently before the Court is the January 7, 1997 motion for summary judgment filed by defendants. Pursuant to Orders entered January 18, 1997 and February 12, 1997, the motion was deemed submitted, without oral argument, on February 20, 1997.

I. Procedural History

Plaintiff commenced this action by filing a complaint in the Circuit Court for Lawrence County, Alabama. The complaint alleged that plaintiff had been employed by defendant Champion International Corp., and had suffered an on-the-job injury. Count I of the complaint alleged a claim under Alabama's tort of outrage for Champion's alleged failure to pay plaintiff workers' compensation benefits arising out of that injury. Counts II and IV[1] both alleged that Champion breached the terms of the

---

[1]The fourth count in the complaint is styled "count III."



Collective Bargaining Agreement (CBA) between Champion and plaintiff's union by failing to allow plaintiff to return to work following her injury.[2] Count III of the complaint alleged that Champion had terminated plaintiff's employment in retaliation for plaintiff's filing of a workers' compensation lawsuit, in violation of Ala. Code § 25-5-11.1. The complaint demanded $2 million in compensatory and punitive damages.

Champion and Sedgwick James removed this action by a Notice of Removal dated September 13, 1996. Defendants invoked this Court's diversity jurisdiction, claiming that Sedgwick James (which has its principal place of business in Alabama) was fraudulently joined in this action. Defendants alleged that Sedgwick James was not plaintiff's employer, and thus has no connection to (or potential liability for) plaintiff's claims.

Defendants also asserted jurisdiction under 28 U.S.C. § 1331, arguing that counts I, II, and IV were preempted by § 301 of the Labor-Management Relations Act. No motion to remand was filed.

---

[2] The only difference that the Court can discern between counts II and IV is that count II alleges that Champion breached the CBA in "bad faith," giving rise to an alleged claim for punitive damages. So, perhaps count II is a tort claim for "bad faith," similar to the bad-faith action created by the Alabama Supreme Court in the insurance context.

II. Standards for Evaluating a Summary Judgment Motion

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not

4

bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, \_\_\_\_\_ U.S. \_\_\_\_, 116 S.Ct. 2175 (1996).

### III. Relevant Undisputed Facts

Plaintiff began her employment with Champion on November 2, 1992.  (Second Aff. of Charles Adams).  She sustained an injury while at work on November 24, 1992 when a mop handle struck her

left wrist. (Plaintiff's Aff.). After the accident, Champion placed plaintiff on light duty work, which she performed until February 1993. (Plaintiff's Depo. at 17-24). In February 1993, plaintiff was still experiencing pain in her arm, and underwent surgery to correct a congenital defect -- one bone in her arm was abnormally long, and had been so from birth. (Id.).

Following this surgery, plaintiff returned to work at Champion in July 1993, but only worked two and one-half days. (Id. at 24). During her renewed employment, plaintiff experienced pain and swelling in her arm, and again sought medical treatment. (Id.; Plaintiff's Aff.). Plaintiff eventually had two more surgical procedures performed on her wrist in November 1993 and May 1994. (Plaintiff's Aff.). Following these treatments, plaintiff was released to return to light duty work by her physician, Dr. Masear, on April 1, 1996. (Id.).

Plaintiff apparently expressed interest in returning to work after April 1, 1996, because the record contains a memorandum from Charles Adams (Champion's manager of labor relations) discussing a meeting between plaintiff, Joe Marshall (a union representative), and Charles Adams on April 4, 1996. (Id.). The memorandum states Champion's position that plaintiff's injury prevented her from performing any work at Champion. (Id.). However, it also reflects that plaintiff was seeking long-term disability benefits, and deferred a decision regarding

6

plaintiff's employment until plaintiff's disability claim was resolved. (Id.).

During the course of plaintiff's treatment, plaintiff filed a civil action against Champion in the Circuit Court for Lawrence County, Alabama, seeking workers' compensation benefits. (Id.). The Circuit Court found that plaintiff's injuries were job-related and ordered Champion to pay her workers' compensation benefits. (Id.).

Finally, it is undisputed that plaintiff's employment at Champion was governed by two collective bargaining agreements (CBA's) entered into between Champion and the union of which plaintiff was a member. (Charles Adams Second Aff.).

### IV. Analysis

Initially, defendant Sedgwick James of Alabama, Inc., requests summary judgment because, as a matter of undisputed fact, it was not plaintiff's employer,[3] and could not be liable to plaintiff under any theory of relief alleged in the complaint. Plaintiff's response is that Sedgwick was "involved" in Champion's decision to deny plaintiff workers' compensation and/or disability benefits, and so is a proper defendant. (Plaintiff's Aff.).

---

[3] See Oliver Aff.

7

Under the facts in the record, however, it is clear that Sedgwick James cannot, as a matter of law, be liable to plaintiff. Initially, the Court notes that Sedgwick can have no liability to plaintiff under counts II, III, or IV. The claims in those counts accuse Champion of breaching plaintiff's employment contract and/or terminating plaintiff's employment in retaliation for plaintiff's workers' compensation claim. Since it is undisputed that Sedgwick was not plaintiff's employer and was not a party to the CBA, Sedgwick cannot be held liable for breaching the CBA or wrongfully terminating plaintiff's employment. Thus, it is clear that Sedgwick is entitled to judgment as a matter of law with respect to counts II, III, and IV.

With respect to count I, both defendants assert that the conduct alleged in the complaint is insufficient, as a matter of law, to constitute the "outrageous conduct" required for liability under Alabama law. The Court agrees. Under Alabama law, the plaintiff must show that the defendant's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as utterly atrocious and intolerable in a civilized society." Fitch v. Voit, 624 So. 2d 524, 544 (Ala. 1993).

Here, plaintiff alleges in her complaint and affidavit that Champion (perhaps advised or aided by Sedgwick) refused to pay her workers' compensation benefits following her injury.

8

However, there is evidence in the record that plaintiff's arm problems may be due in whole or part to a congenital defect, not any work-related injury. The decision of Champion and/or Sedgwick not to pay workers' compensation to plaintiff certainly cannot rise to the level of "utterly atrocious" conduct, and is therefore insufficient to allow plaintiff's outrage claim to proceed to trial. Both Champion and Sedgwick are entitled to judgment as a matter of law with regard to count I.[4]

Turning to Champion's arguments, its principal contention with respect to counts II and IV is that plaintiff's claims are preempted by the Labor-Management Relations Act, 29 U.S.C. § 185. Champion argues that plaintiff has failed to exhaust the CBA's grievance procedures, and so counts II and IV must be dismissed.

The Supreme Court has made it clear that § 301 only preempts a state law claim "if resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement." Lingle, 486 U.S. at 405-06. See also International Brotherhood of Electrical Workers v. Hechler, 481 U.S. 851, 858 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 218 (1985). So, the proper mode of analysis is for the court to examine the elements required to prove the state law claim, to see if any of those elements requires interpretation of the CBA. Lightning v.

---

[4]Defendants also argue that count I is preempted by § 301 of the LMRA, and plaintiff's claim must be dismissed for her alleged failure to exhaust the CBA's grievance procedures. The Court does not reach this argument.

9

Roadway Express, 60 F.3d 1551, 1557 (11th Cir. 1995).

Here, plaintiff cannot and does not dispute that counts II and IV will require interpretation of the CBA. Both counts accuse Champion of failing to honor plaintiff's employment rights under the CBA, particularly her right to return to work following a work-related injury. Both counts are, in essence, claims that Champion breached the provisions of the CBA. As such, it is clear that the state-law claims asserted in counts II and IV are preempted.

Plaintiff's claims, now converted into federal claims under § 301, fail because plaintiff has failed to exhaust her remedies under the CBA. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 163 (1983); Redmond v. Dresser Industries, 734 F.2d 633, 635 (11th Cir. 1984).[5] Defendants point out that, under the CBA, an employee must follow a four-step grievance procedure, ending in arbitration of the dispute by a neutral arbitrator. (1990 CBA at 24-28). It is undisputed that plaintiff has not exhausted this four-step procedure. (Charles Adams Second Aff.).

However, plaintiff has introduced two pieces of evidence in an attempt to avoid dismissal. Plaintiff's own affidavit asserts that she was informed by the Union that the grievance procedures

---

[5]The well-recognized exception to the exhaustion requirement, which occurs when the union breaches its duty of fair representation, is not present here. See Gutierrez v. United Foods, Inc., 11 F.3d 556, 559 n.8 (5th Cir. 1994).

10

were exhausted, and that many of those procedures did not apply because plaintiff was on a medical leave of absence instead of being terminated. (Plaintiff's Aff.). However, this portion of plaintiff's affidavit is inadmissible hearsay, offered to prove the truth of the conclusion asserted -- that plaintiff had exhausted her grievance remedies under the CBA. In addition, although plaintiff's affidavit asserts that the CBA's provisions do not apply to her because she was not terminated, the plain language of the CBA states that the grievance procedure applies to "all grievances claiming that the Company has violated" the CBA. (1990 CBA at 25).

Plaintiff has also submitted the affidavit of Joe Marshall, an official of plaintiff's union. Marshall's affidavit states, in a conclusory manner and without any specific factual description, that plaintiff exhausted her remedies under the CBA. Plaintiff takes the position in her brief opposing the motion for summary judgment that the April 4, 1996 meeting with Charles Adams was the only effort she was required to make to exhaust her remedies under the CBA.

However, the Court is not required to accept the legal conclusion offered by Marshall, and repeated as hearsay in plaintiff's affidavit. Although it could be argued that plaintiff's meeting with Charles Adams satisfied step 2 of the CBA's grievance procedure, there is no dispute that steps 3 and 4 were not complied with -- there was no hearing before the union's

11

grievance committee and no arbitration proceedings took place.

Because the parties do not dispute that, factually, the only grievance procedure initiated by plaintiff was the April 4, 1996 meeting, the Court is free to disregard Marshall's legal conclusion and reach its own conclusion based on the undisputed facts. Here, because it is not disputed that plaintiff failed to comply with steps 3 and 4 of the CBA's grievance procedure, the claims asserted in counts II and IV must be dismissed.

Finally, with respect to count III (plaintiff's claim of retaliatory discharge under Ala. Code § 25-5-11.1), Champion takes the position that plaintiff took a voluntary leave of absence and was never terminated from work. As the record currently stands, the Court is unable to adjudicate this issue as a matter of law in favor of Champion, and so Champion's motion will be denied with respect to count III. Champion is free to make another motion for summary judgment regarding count III's factual underpinnings. In addition, the Court wishes to draw the parties' attention to its recent decision in Vines v. Sloss Industries, Inc., 1996 WL 806682 (N.D. Ala. November 25, 1996). Under the reasoning expressed in Vines, plaintiff's retaliation claim may be preempted by the LMRA.

To conclude, defendant Sedgwick James of Alabama, Inc., is entitled to judgment as a matter of law with regard to all claims alleged in the complaint. Defendant Champion International Corporation is entitled to judgment as a matter of law with

respect to the claims asserted in counts I, II, and IV of the complaint. A separate Order will be entered granting Sedgwick's motion for summary judgment with respect to all counts and granting Champion's motion with respect to counts I, II, and IV. The Court expressly finds that there is no just reason for delay, and will direct the clerk to enter a final partial judgment under Rule 54(b) accordingly.

However, the Court cannot grant Champion's motion for summary judgment with respect to count III. A separate Order denying Champion's motion as to count III will be entered.

DONE this 27th day of March, 1997.

_____
SENIOR UNITED STATES DISTRICT JUDGE

13